UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
ANASTASIA IVANOVA                                    No. 22 Civ. _____
               Plaintiff,
                                                                        **COMPLAINT**

         Against
                                                                      **PLAINTIFF DEMANDS A**
ADVANCED REHABILITATION, P.C.,                **TRIAL BY JURY**
NATHAN MANAGEMENT Corp.,
EUGENE SELDIN and JULIA SAPOFF.
               Defendants
-----------------------------------------------------------X

Plaintiff Anastasia Ivanova, by her counsel, The Law Office of Olga Medyukh, PLLC and Harrison, Harrison & Associates, Ltd., complaining of Defendants Advanced Rehabilitation P.C., Nathan Management Corp., Eugene Seldin and Julia Sapoff (collectively "Defendants") alleges the following upon personal knowledge as to herself and her own acts, and upon information and belief as to all other matters:

### NATURE OF CLAIM

1. This action is brought to remedy disability discrimination, failure to accommodate, and retaliation in violation of the Americans with Disabilities Act as Amended ("ADAAA"), 42 U.S.C. §12102; 29 C.F.R. §1630 and the New York City Human Rights Law, Administrative Code of the City of New York §8-107 *et seq*. (the "NYCHRL").

2. Plaintiff worked for Defendants as a full-time collection agent and credentialing specialist from July 2017 until Defendants terminated her employment on July 16, 2020.

3. Plaintiff is a disabled individual as defined by the ADAAA and NYCHRL. Plaintiff suffers from Type 1 Diabetes – an autoimmune disease that substantially limits her daily life activities and work.

4. Plaintiff informed Defendants of her disability and explained that due to the disease she was at high risk for life threatening complications if she were to contract Coronavirus (Covid-19).

5. Defendants knew of Plaintiff's medical condition and failed to accommodate Plaintiff in her request to work remotely or provide an alternate work schedule, instead terminating Plaintiff in violation of the ADAAA and NYCHRL.

6. Plaintiff seeks compensatory and punitive damages, reasonable attorneys' fees and costs, and other appropriate relief pursuant to the ADAAA and the NYCHRL.

## JURISDICTION AND VENUE

7. This Court has federal question jurisdiction over Plaintiff's ADAAA claim pursuant to 28 U.S.C. §1331.

8. This Court has supplemental jurisdiction under 28 U.S.C. §1367 over Plaintiff's NYCHRL claim in that Plaintiff's NYCHRL claims are so related to her ADAAA claims as to form part of the same case or controversy

9. Pursuant to 28 U.S.C. 1391(a)(2) venue is proper in this Court because a substantial part of the events giving rise to the claims herein occurred within the Eastern District of New York.

## PARTIES

10. Plaintiff is an individual who resides in the State of New Jersey.

11. Defendant Advanced Rehabilitation P.C. ("Advanced Rehabilitation") is a Professional Service Corporation, incorporated in the State of New Jersey. At all times relevant hereto, Advanced Rehabilitation did business at its office located at 2305 Hylan Boulevard, Staten Island, New York 10306.

12. Defendant Advanced Rehabilitation is a provider of medical services providing pain management and physical and occupational therapy.

13. Defendant Nathan Management Corp. ("Nathan Management") is a Business Corporation, incorporated in the State of New York with its principal place of business located at 2305 Hylan Boulevard, Staten Island, New York 10306.

14. Defendant Nathan Management provided management services to Defendant Advanced Rehabilitation, including payroll services.

15. Defendant Nathan Management was listed as Plaintiff's employer on the wage statements provided with her pay.

16. Defendants Advanced Rehabilitation and Nathan Management employed Plaintiff to work in the office of Advanced Rehabilitation, located at 2305 Hylan Boulevard, Staten Island, New York 10306 from in or about July 2017 until July 2020.

17. At all times relevant hereto, Advanced Rehabilitation and Nathan Management (collectively the "Corporate Defendants") were Plaintiff's employer within the meaning of the ADAAA and NYCHRL.

18. Defendant Eugene Seldin ("Seldin") is an individual and, on information and belief, is the owner and Chief Executive Officer of Nathan Management.

19. Plaintiff reported directly to Seldin throughout her employment by the Corporate Defendants.

20. Defendant Seldin hired Plaintiff and told her how much she would be paid. Throughout her employment by Defendants, Defendant Seldin directed Plaintiff's work, scheduled her work hours, and signed her pay checks.

21. Defendant Julia Sapoff ("Sapoff") is an owner and, on information and belief, the CEO and/ or Managing Partner /shareholder of Defendant Advanced Rehabilitation. Defendant Sapoff directed the care at the Advanced Rehabilitation offices including in Staten Island where Plaintiff worked and, along with Defendant Seldin, directed Plaintiff's work.

22. Defendant Sapoff had and used the power to hire and fire Advanced Rehabilitation employees, including Plaintiff.

23. After Defendant Seldin fired Plaintiff, Plaintiff asked him if she could have her job back. Defendant Seldin responded by telling Plaintiff that he had to obtain Defendant Sapoff's approval before he could consider giving Plaintiff her job back.

## FACTUAL ALLEGATIONS

Plaintiff's Disability

24. In 1994, Plaintiff was diagnosed with Diabetes Type 1. This is an auto-immune disease that substantially impacts Plaintiff's daily life activities and work. There is no cure for this illness and she has to monitor it twenty four hours a day, seven days a week.

25. Diabetes Type 1 substantially limits the endocrine function. This physical condition substantially limits major life activities such as eating, walking, running, exercising, driving, concentration, and thinking.

26. To monitor her daily glucose levels, an insulin pump and a glucose sensor are always attached to Plaintiff's body. She must calculate all carbohydrate intake as part of the glucose monitoring process.

27. In the event Plaintiff has high blood sugar levels (hyperglycemia) she experiences nausea, fatigue, headaches, and vomiting. If hyperglycemia is not treated, Plaintiff can go into a coma. Hyperglycemia can lead to leg amputation and severe nerve pains.

28. In the event of low blood sugar levels (hypoglycemia) she experiences nausea, chills, body shakes, sweats, lightheadedness, inability to concentrate, difficulty thinking clearly, inability to drive. If hypoglycemia is not treated, Plaintiff can go into a coma and potentially die.

29. Based on the above, Plaintiff is a disabled individual pursuant to the ADAAA and NYCHRL.

30. As a result of Plaintiff's underlying condition, Diabetes Type 1, she is at high risk and susceptible to life threatening complications in the event she contracts the Coronavirus (COVID-19).

Plaintiff's Employment

31. Plaintiff worked for Defendants from in or around July 2017 until Defendant Seldin terminated her employment on July 16, 2020.

32. Defendants employed Plaintiff as a collection agent and credentialing specialist.

33. Plaintiff's duties included following up with the billing invoices and collection of payments.

34. Sometime in March 2020, at the outset of the COVID-19 Pandemic, Defendants closed the physical office and Plaintiff was asked, along with other coworkers, to start working remotely.

35. Plaintiff worked remotely from home and Defendants were very satisfied with her work.

36. Plaintiff had frequent check-ins and communicated by telephone with her manager, Defendant Seldin and with Defendant Sapoff. Defendants Seldin and Sapoff monitored Plaintiff's work activities via internal software.

37. Defendants and their agents did not complain to Plaintiff about her work product while she was working from home.

38. Defendant Seldin praised Plaintiff's work while she worked from home.

39. On or about late June 2020, Defendants reopened the work facility and began to request that employees return to the physical work site.

40. Knowing that the office space was rather small, Plaintiff inquired of two co-workers – Lyudmila (front desk administrator) and Lyubov K. (billing specialist) about the COVID-19 health and safety measures implemented by Defendants.

41. Both coworkers confirmed that the office space was not cleaned daily, and the level of patient scheduling was up to the pre-pandemic intake numbers. In other words, Defendants were operating at full capacity, but not following health and safety measures such as frequent sanitation of bathrooms, doorknobs, chairs and other areas commonly used by patients and staff alike. Defendants had also not implemented social distancing of their staff and patients.

42. Plaintiff's workstation was in the basement. Her desk and chair were approximately one foot from Lyubov (billing). Maintaining social distance in the small cabinet where Defendants assigned Plaintiff to work was not possible.

43. Plaintiff's coworkers confirmed that some of the staff were not wearing masks part of the time and one masseuse refused to wear a mask at all.

6

44. To get from the basement to the first floor waiting area both patients and staff use one narrow staircase and a narrow hallway. These narrow pathways do not allow for two people to pass at the same time without one having to turn sideways. Patients frequently went up and down the stairs for procedures.

45. Between late June 2020 and July 16, 2020, Plaintiff worked in the office a few days a week on Mondays, Wednesdays and Fridays. These were the days when her coworker Lyubov and patients were not in the office.

46. Plaintiff's working hours in late June and July 2020 were approximately 20 hours per week.

47. On Thursday, July 16, 2020, Defendant Seldin told Plaintiff to start coming to the office every Tuesday and Thursday. He wanted Plaintiff to work on the same days that Lyubov, the patients, and others were in the office.

48. Plaintiff told Defendant Seldin that, due to her Diabetes Type 1, she was at high risk for life threatening complications should she contract the COVID–19 virus.

49. Plaintiff knew how dangerous it would be for her to contract COVID-19 because she was monitored by and interacted with her endocrinologist and primary care doctors at least every three months.

50. Based on conversations with coworkers and her knowledge of the office layout, she informed Defendant Seldin of the reasons why she thought her health and safety would be in danger if she came to the office on the days when it was impossible to social distance because Lyubov and the patients would be present and Plaintiff would be forced to work in close proximity to Lyubov.

51. Plaintiff requested an accommodation of continuing to work from home or coming to the office on the days when her coworker and the patients were not there. Defendant Seldin refused and laughed off her fears by stating that she should not be afraid to catch COVID-19 because "it's just like the flu."

52. Defendant Seldin gave Plaintiff only one reason why he wanted her in the office—to see her face to face.

53. Plaintiff knew that Defendants were not following COVID-19 health, safety, and social distancing measures.

54. Plaintiff pleaded to be able to continue working from home or in the alternative to be permitted to come in on the days or times that her coworker (Lyubov) and patients were not there (i.e. Mondays, Wednesdays, and Fridays).

55. Again, Defendant Seldin refused Plaintiff's requests despite the fact that she had done this in the past without any problems or complaints about her work from Defendants.

56. Plaintiff attempted to preserve her employment and asked for clarification of why she couldn't continue to work remotely or come in on days when her coworker was not there.

57. Defendant Seldin told her that he wanted her in the office when everyone was there and preferred to see her face-to-face as opposed to speaking on the phone.

58. Defendant Seldin ended the conversation by informing Plaintiff that since she could not come in on Tuesdays and Thursdays, she and Defendants would have to separate.

59. After Defendant Seldin told Plaintiff that she and Defendants would have to separate on July 16, 2020, Defendants suspended her work log-in and denied her access to her work email and software.

60. Defendants never engaged in a discussion with Plaintiff in an attempt to find an accommodation of her disability. Instead, they peremptorily fired her.

61. Furthermore, Defendants never provided Plaintiff "with a written final determination identifying any accommodation granted or denied" as required by section 8-107(28)(d) of the NYCHRL.

Defendants Retaliation Against Plaintiff

62. Plaintiff informed Defendants of her disability.

63. Plaintiff asked for accommodations to her work schedule due to her disability.

64. Plaintiff complained to her immediate manager, Defendant Seldin, about Defendants' discrimination and failure to accommodate her disability.

65. Defendants responded to Plaintiff's requests for accommodation by retaliating against her and terminating her employment instead of engaging in an interactive process and attempting to find an accommodation.

66. As a result of Defendants' discrimination and retaliation against her based on her disability, Plaintiff suffered and continues to suffer monetary damages, including but not limited to lost wages and lost benefits.

67. Plaintiff also suffers and continues to suffer emotional distress and mental anguish and humiliation and embarrassment.

**FIRST CAUSE OF ACTION**
**Disability Discrimination/Failure to Accommodate and Retaliation under the ADAAA**
**(Against Defendants Advanced Rehabilitation P.C. and Nathan Management Corp.)**

68. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if they were fully set forth herein.

9

69. By the acts and practices set forth above, the Corporate Defendants discriminated against Plaintiff on the basis of her disability, Type 1 Diabetes, in the terms and conditions of her employment in violation of ADAAA.

70. By the acts and practices set forth above, in violation of the ADAAA, the Corporate Defendants refused to accommodate Plaintiff or to engage in an interactive process to find an accommodation of Plaintiff's disability.

71. By the acts and practices set forth above, in violation of the ADAAA, the Corporate Defendants retaliated against Plaintiff for her complaints and opposition to the unlawful discrimination and failure to accommodate to which she was subjected.

72. Plaintiff received a Notice of Right to Sue from the Equal Employment Opportunity Commission ("EEOC") on May 4, 2022. (Attached hereto as **Exhibit A.**)

73. Plaintiff is now suffering and continues to suffer monetary damages and damages for emotional distress, mental anguish, and humiliation as a result of the Corporate Defendants' violations of the ADAAA.

### SECOND CAUSE OF ACTION
### Disability Discrimination and Retaliation Pursuant to the NYCHRL
### (Against All Defendants)

74. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if they were fully set forth herein.

75. By the acts and practices set forth above, Defendants discriminated against Plaintiff on the basis of her disability, Type 1 Diabetes, in the terms and conditions of her employment in violation of the NYCHRL.

76. By the acts and practices set forth above, Defendants discriminated against Plaintiff, in violation of the NYCHRL, by refusing to accommodate Plaintiff with regard to her disability, Type 1 Diabetes.

77. Defendants further violated the NYCHRL by refusing to engage with Plaintiff in the Cooperative Process to find an accommodation for her disability and by refusing to provide Plaintiff "with a written final determination identifying any accommodation granted or denied" as required by section 8-107(28)(d) of the NYCHRL.

78. Moreover, by the acts and practices set forth above, Defendants violated the NYCHRL by retaliating against Plaintiff and terminating her employment in response to her opposition to unlawful discrimination after she requested an accommodation of her disability and complained that Defendants had summarily denied her request without engaging in an attempt to find an accommodation for her disability.

79. On information and belief, Defendant Seldin is the decision maker who decided to illegally discriminate against Plaintiff by denying her request for accommodation of her disability and refusing to take part in the Cooperative Process.

80. Furthermore, on information and belief, Defendant Seldin is the decision maker who decided to illegally retaliate against Plaintiff for opposing discrimination by requesting an accommodation and complaining that Defendants had summarily denied her request without engaging in an attempt to find an accommodation for her disability.

81. Because Defendant Seldin was the decision maker who decided to illegally discriminate and retaliate against Plaintiff, Defendant Seldin has direct liability for Defendants' violations of the NYCHRL.

82. Plaintiff is now suffering and will continue to suffer monetary damages and damages for emotional distress, mental anguish, and humiliation as a result of Defendants' violations of the NYCHRL.

83. Defendants acted intentionally and with malice and/or reckless indifference to Plaintiff's statutory rights.

### THIRD CAUSE OF ACTION
### Aiding and Abetting Pursuant to the NYCHRL
### (Against Julia Sapoff and Eugene Seldin)

84. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if they were fully set forth herein.

85. By the acts and practices set forth above, Defendants Sapoff and Seldin aided and abetted the Corporate Defendants in their illegal discrimination and retaliation against Plaintiff.

86. Defendants Sapoff and Seldin therefore bear liability under the NYCHRL for aiding and abetting illegal discrimination and retaliation.

87. Plaintiff is now suffering and will continue to suffer monetary damages and damages for emotional distress, mental anguish, and humiliation as a result of Defendants violations of the NYCHRL.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment:

a) Declaring the acts and practices complained of herein in violation of the ADAAA and the NYCHRL;

b) Permanently restraining these violations;

c) Directing Defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect Plaintiff's prospective employment opportunities;

d) Awarding Plaintiff damages in an amount to be determined at trial for loss of wages, benefits, and promotional opportunities, including an award of front pay to compensate Plaintiff for loss of future salary and benefits;

e) Awarding Plaintiff damages in an amount to be determined at trial to compensate her for emotional distress, mental anguish, and humiliation;

f) Awarding Plaintiff damages relating to any adverse tax consequences;

g) Awarding Plaintiff pre-judgment and post-judgment interest;

h) Awarding Plaintiff reasonable attorneys' fees and costs of this action; and

i) Awarding such other and further relief as the Court deems necessary and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

Dated: New York, New York
June 20, 2022

          **LAW OFFICE OF OLGA MEDYUKH, PLLC**
          */s/Olga Medyukh*       .
          Olga Medyukh, Esq.
          1815 Avenue U, Suite 2
          Brooklyn, NY 11229
          Tel: (718) 902-6711
          Email: omedyukh@gmail.com

          **HARRISON, HARRISON & ASSOC., LTD.**
          */s/David Harrison*
          David Harrison, Esq.
          dharrison@nynjemploymentlaw.com
          Julie Salwen, Esq.
          jsalwen@nynjemploymentlaw.com
          110 State Highway 35, Suite 10
          Red Bank, New Jersey 07701
          Tel: (718) 799-9111

          *Attorneys for Plaintiff*

# EXHIBIT A